IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-02663-CMA-STV

COLORADO CONTRACTORS ASSOCIATION,
COLORADO STONE, SAND, & GRAVEL ASSOCIATION,
COLORADO READY MIXED CONCRETE ASSOCIATION,
COLORADO MOTOR CARRIERS ASSOCIATION,
COLORADO ASPHALT PAVEMENT ASSOCIATION,
HISPANIC CONTRACTORS OF COLORADO, and
ROCKY MOUNTAIN MECHANICAL CONTRACTORS ASSOCIATION,

    Plaintiffs,

v.

CITY & COUNTY OF DENVER,
MICHAEL B. HANCOCK, and
ROBERT M. MCDONALD,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

This matter is before the Court on Defendants the City and County of Denver, Michael B. Hancock, and Robert M. McDonald's ("Denver") Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted (Doc. # 35). For the following reasons, the Court grants the motion and dismisses Plaintiffs' claims without prejudice.

### I.    BACKGROUND

This case arises from a vaccine mandate instituted by Denver in response to the COVID-19 pandemic. Plaintiffs are organizations that represent contractors in the

construction industry that do business with Denver on city projects. (Doc. # 10 at ¶¶ 13–19.)

On August 2, 2021, Denver issued a COVID-19 vaccination order ("Order") that requires specified entities and types of entities, including the city of Denver, to comply with and enforce a vaccination requirement for their employees. (*Id.* at ¶¶ 27–28.) The Order lists several types of entities subject to the vaccine mandate, including hospitals, schools, childcare centers, and correctional facilities, among others. (*Id.* at ¶ 30.) The Order requires those entities to ascertain their employees' vaccination status, maintain vaccination records, and ensure that all personnel are fully vaccinated by September 30, 2021. (*Id.* at ¶¶ 28, 31.) In addition, the Order requires employers to provide reasonable accommodations to employees eligible for religious and medical exemptions. (*Id.* at ¶ 34.)

On September 1, 2021, Denver issued another COVID-19 vaccination order, which added language to the Order requiring "any entities (including contractors and subcontractors at any level) providing service by contract to above entities and types of entities" to comply with and enforce the vaccine mandate. *See* (Doc. # 10-9.) In addition to arguing that contractors are not subject to enforcement of the original Order, Plaintiffs contest the validity and effectiveness of the September order. (Doc. # 10 at ¶ 5 n.1.)

Plaintiffs initiated this action for declaratory and injunctive relief on September 30, 2021. (Doc. # 1). They filed an Amended Complaint on October 6, 2021. (Doc. # 10.) Therein, Plaintiffs allege constitutional violations with respect to due process, equal protection, and the Contracts Clause. In addition, Plaintiffs assert that Denver did not

follow proper procedure for issuing the Order and object that contractors were not originally included in the August Order and are therefore not subject to its enforcement.

Plaintiffs filed a Motion for Preliminary Injunction (Doc. # 18) on October 22, 2021. After that Motion was fully briefed and set for a hearing, Denver filed the instant Motion to Dismiss (Doc. # 35) on December 2, 2021. In its Motion, Denver argues, in part, that Plaintiffs lack Article III standing to bring their claims. The Court issued an order continuing the preliminary injunction hearing until Denver's Motion to Dismiss and the Article III standing issue was fully briefed. *See* (Doc. # 37.) The Motion to Dismiss is now ripe for review. *See* (Doc. # 39; Doc. # 42.)

## II.     LEGAL STANDARDS

Denver brings its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and alternatively under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion generally takes one of two forms: a facial attack or a factual attack. *See Cunningham v. Univ. of N.M. Bd. of Regents*, 531 Fed. Appx. 909, 914 (10th Cir. 2013). A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack, as is the case here, the Court must accept the allegations in the complaint as true. *Id.* By contrast, a factual attack "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.*; *see also New*

3

*Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) ("A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court."). Thus, in reviewing a factual attack, the district court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule (12)(b)(1)." *Holt*, 46 F.3d at 1002.

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d

1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

### III.   ANALYSIS

Denver moves to dismiss Plaintiffs' claims under Rule 12(b)(1) on the basis that Plaintiffs have failed to establish Article III standing for their constitutional claims and, consequently, the Court lacks supplemental jurisdiction to consider the state law claims. (Doc. # 35 at 3.) In addition, Denver moves to dismiss all claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (*Id.*)

### A.   STANDING

As an initial matter, the Court rejects Plaintiffs' request that the Court consider documents outside of the pleadings in reviewing the issue of Article III standing. (Doc. # 39 at 1 n.1.) Plaintiffs argue that the Court may consider affidavits and other evidence outside the pleadings in reviewing a 12(b)(1) motion to dismiss for lack of jurisdiction; however, Plaintiffs incorrectly rely on the standard for reviewing a **factual** attack on jurisdiction. (*Id.* at 1 n.1, 10.) Because Denver expressly raises a **facial** attack on jurisdiction, the Court may not look beyond the Amended Complaint and presumes the allegations therein to be true. *See Cunningham*, 531 Fed. Appx. at 914 (declining to go beyond the complaint's four corners to examine extrinsic evidence in resolving a facial attack on jurisdiction). Accordingly, the Court will not consider the affidavits and other

evidence attached to Plaintiffs' Response to Defendants' Motion to Dismiss (Doc. # 39-1).

Article III restricts federal courts to deciding "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. In order for this Court to have jurisdiction, Plaintiffs must demonstrate that they have standing to bring suit under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, Plaintiffs must allege that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements and must clearly allege facts demonstrating each element. *Id.* Further, Plaintiffs must demonstrate standing separately for each claim they assert. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

The "[f]irst and foremost" of standing's three elements is "injury in fact." *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To establish injury in fact, Plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). To be concrete, an injury "must actually exist." *Spokeo, Inc.*, 578 U.S. at 340. An alleged future injury is sufficiently imminent "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotations omitted).

In its Motion to Dismiss, Denver argues that Plaintiffs have failed to establish Article III standing because the Amended Complaint does not include allegations sufficient to demonstrate either injury in fact or that Plaintiffs' alleged prospective injuries are caused by Denver's actions. (Doc. # 35 at 5.) Rather, Denver argues that Plaintiffs allege only hypothetical harms stemming from their fear that the Order will cause a mass resignation of employees that will harm contractor businesses and affect their ability to perform their contracts. (*Id.* at 7.) The Court agrees with Denver that Plaintiffs have not established standing with respect to their third, fourth, and fifth claims for relief, which implicate due process and contract rights.

First, the Court finds that Plaintiffs have failed to establish injury in fact in the form of threatened civil, criminal, or administrative penalties resulting from enforcement of the Order. Plaintiffs specifically take issue with the Order's requirement that employees be fully vaccinated within six weeks of the Order's issuance, which Plaintiffs assert violates their due process rights because "compliance is impossible." (Doc. # 10 at ¶ 61.) Aside from vaguely referencing being "under threat of criminal, civil, and administrative penalties" if they do not timely comply with the Order (*id.*), Plaintiffs fail to allege a credible threat of enforcement sufficient to establish injury in fact. *See Susan B. Anthony List*, 573 U.S. at 164 (explaining that a plaintiff may establish injury in fact from the threat of prosecution or enforcement when the threat of enforcement is substantial and credible). Undermining their own argument, Plaintiffs attach a letter to their Amended Complaint from Danica Lee, Deputy Public Health Official for COVID-19 Response at the Denver Department of Public Health and Environment ("DDPHE"),

explaining that "the City's goal is to achieve compliance, not to penalize employers." (Doc. # 10-5 at 3); *see* Fed. R. Civ. P. 10(c). To that end, Ms. Lee advised that DDPHE "will consider allowing additional time as an individual employer may need to comply with the order." (Doc. # 10-5 at 3.) Given the lack of allegations of any credible threat of enforcement—and indeed, attachments supporting quite the opposite conclusion—the Court finds that Plaintiffs have failed to allege an injury in fact in the form of any imminent threat of enforcement or penalties.

Next, the Court concludes that Plaintiffs fail to allege an injury with respect to their property rights and contract rights. Plaintiffs assert broadly that their property rights will be affected by having "to expend their own resources" enforcing the Order, defending themselves "against claims arising validate [sic] the bona fides of their employees' requests for medical and religious exemptions," losing employees who decline to be vaccinated, and "being sued or penalized for not meeting project timelines and budgets." (Doc. # 10 at ¶ 7.) However, Plaintiffs' Amended Complaint lacks any specific factual allegations to demonstrate a substantial, imminent risk of any of these potential injuries or impairment of their contract rights. Plaintiffs provide only three "examples of specific adverse effects" from enforcement of the Order. (*Id.* at ¶ 44.) The Court addresses each in turn.

First, Plaintiffs allege that one contractor "reports that approximately 68% of its construction workforce and 23% of its professional staff are unvaccinated as of this filing." (*Id.*) Based on this number, Plaintiffs allege that "losses of employees will substantially delay [the contractor's] existing Denver projects and affect its ability to bid

8

for Denver work in the foreseeable future." However, Plaintiffs fail to demonstrate how enforcement of the Order will lead to this hypothetical scenario in which the contractor incurs such significant losses of employees as to delay projects or affect bidding. Plaintiffs do not specify how many employees will make up these "losses," and Plaintiffs do not allege **how** these losses are expected to occur. It is unclear to the Court if Plaintiffs intend to allege that substantial numbers of unvaccinated employees will resign en masse, or if the contractor will be forced to terminate or reassign substantial numbers of employees who both refuse to get vaccinated and do not qualify for any exemptions. Asking the Court to connect the dots of such "a highly attenuated chain of possibilities" does not satisfy the requirement that "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Next, Plaintiffs allege that another contractor "estimates that about 30% of its employees currently working on Denver projects are unvaccinated and cannot be relocated to non-Denver projects" and "expects that enforcement of the Order will delay Denver projects by three months." (Doc. # 10 at ¶ 44.) Again, Plaintiffs fail to plead a plausible connection between 30% of the contractor's employees being unvaccinated at the time of filing and enforcement causing project delays. Plaintiffs do not allege that these 30% of employees will continue to remain unvaccinated or fail to qualify for any exemption. Without any supporting factual basis, the Court is uncertain how the contractor's percentage of unvaccinated employees at the time of filing the Amended Complaint will lead to the hypothetical scenario in which the contractor's projects will be

delayed by three months. Stated differently, Plaintiffs fail to plead a sufficient causal connection that this speculative injury is fairly traceable to enforcement of the Order.

As their third example, Plaintiffs allege that another contractor "estimates that 50% of its workforce is unvaccinated and that 50% of those workers will refuse vaccinations." (*Id.*) Plaintiffs further allege that the contractor cannot reassign its employees, will not meet its deadlines on Denver projects, and will not bid for more Denver work. (*Id.*) For the same reasons, the Court finds that Plaintiffs' theory of standing "rests on their highly speculative fear" that the workers who remain unvaccinated will fail to qualify for exemptions or will otherwise resign. *Clapper*, 568 U.S. at 410. Plaintiffs fail to provide sufficient support to their allegations to satisfy the requirement that their "threatened injury must be certainly impending." *Id.*; *cf. Texas v. Becerra*, 2:21-CV-229-Z, 2021 WL 5964687 (N.D. Tex. Dec. 15, 2021) (finding that healthcare workers challenging federal vaccinate mandate established injury in fact where their allegations were supported by (1) affidavits from healthcare workers who resigned when former vaccine mandates were enforced; (2) affidavits from executives and officials who reasonably anticipated reductions in staff; and (3) an affidavit from a healthcare worker "who confirms he will resign if forced to receive the COVID-19 vaccine"). As such, the Court concludes that Plaintiffs have not established that their injuries are "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Because Plaintiffs fail to plausibly plead any injury in fact that is traceable to Denver's conduct in issuing the Order, the Court concludes that Plaintiffs have not established standing for their third, fourth, and fifth claims for relief. The Court therefore

grants Denver's Motion to Dismiss with respect to those claims and dismisses those claims without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (affirming dismissal without prejudice where a claim is dismissed for lack of subject matter jurisdiction).

## B.     FAILURE TO STATE A CLAIM

Next, Denver argues that Plaintiffs have failed to plausibly plead an equal protection claim with respect to claim six. (Doc. # 35 at 19.) The Court agrees.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Fourteenth Amendment's equal protection guarantee "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege:

> (1) that similarly-situated individuals were treated differently; and (2) either that the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling government interest, or if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest.

*Haines v. Archuleta*, No. 13-cv-01897-PAB-KLM, 2013 WL 6658767, at *5 (D. Colo. Dec. 17, 2013) (citing *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009)). The parties agree that Plaintiffs' equal protection claim is governed by rational basis review because Plaintiffs do not allege that they are a suspect class or that the Order implicates a fundamental right. *See* (Doc. # 10 at ¶ 89; Doc. # 35 at 19.) Thus, to

survive a motion to dismiss, Plaintiffs must "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (quoting *Brown v. Zavaras*, 63 F.3d 967, 971–72 (10th Cir. 1995)).

Plaintiffs allege that the Order violates equal protection because it exempts from enforcement contractors who provide services to or on behalf of DIA while requiring enforcement against all other city contractors. (Doc. # 10 at ¶ 85.) Plaintiffs assert that this distinction "cannot withstand even rational basis review" and exists "apparently to avoid further delays and budget overruns at DIA." (*Id.* at ¶ 10.)

The Court agrees with Denver that Plaintiffs have failed "to allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Teigen*, 511 F.3d at 1083 (quoting *Brown*, 63 F.3d at 971–72). Conclusory allegations that "[t]here is no basis for the disparate treatment" and "the Order violates the Contractors' equal protection rights" are insufficient to plausibly plead an equal protection violation. (Doc. # 10 at ¶¶ 89–90); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because the Amended Complaint fails to allege facts supporting Plaintiffs' assertion that the exemption for DIA contractors is without any rational basis, the Court finds that Plaintiffs have not adequately stated a claim and grants Denver's Motion to Dismiss with respect to claim six. *See Teigen*, 511 F.3d at 1086 ("Plaintiff's conclusory allegations that the classification lacks a rational basis . . . are insufficient to overcome the presumption of government rationality in this case."); *see also Buggs v.*

*Trujillo*, No. 13-cv-00300-CMA-MJW, 2014 WL 420005, at *7 (D. Colo. Feb. 4, 2014) (concluding that plaintiff who "failed to set forth allegations that render plausible constitutional violations" did not state an equal protection claim).

**C.     STATE LAW CLAIMS**

28 U.S.C. § 1367(c) provides that a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."). After dismissing Plaintiffs' due process, Contracts Clause, and equal protection claims, there are no remaining federal question claims in this case. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c) and dismisses claims one and two without prejudice.[1]

**IV.     CONCLUSION**

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. # 35) is GRANTED;

- Plaintiffs' first, second, third, fourth, and fifth claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction; and

---

[1] It is not clear to the Court whether Plaintiffs are asserting their first claim for relief only as a state law claim. Regardless, the Court finds that the claim as alleged would also fail to state a claim for which relief can be granted under a Fed. R. Civ. P. 12(b)(6) analysis.

- Plaintiffs' sixth claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

It is FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction (Doc. # 18) is DENIED WITHOUT PREJUDICE.

It is FURTHER ORDERED that pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs shall have 30 days to file a second amended complaint curing the pleading deficiencies stated herein. If Plaintiffs fail to do so, the case will be dismissed with prejudice.

DATED:  February 4, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge